IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| JAMES ROBERT CRAIG, *as surviving parent and as anticipated administrator of the* ESTATE OF BENJAMIN CRAIG,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC, INC., and CORECIVIC OF TENNESSEE, LLC,<br><br>Defendants. | Civil Action No. 3:25-CV-50 |

**DEFENDANTS' MOTION TO DISMISS**

Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC (collectively "CoreCivic") move this Court, pursuant to Federal Rule of Civil Procedure 12 (b)(6), to dismiss Plaintiff's Complaint for failing to state a claim against them.

**I. INTRODUCTION**

Benjamin Craig, a state prisoner, died of fentanyl toxicity after consuming illegal drugs. This lawsuit seeks to sidestep Craig's responsibility for that voluntary decision and instead pin liability on the entity housing Craig: CoreCivic. To that end, Plaintiff James Robert Craig—Benjamin's statutory next-of-kin—has brought claims against CoreCivic for negligence and wrongful death. *See* doc. 1 at ¶¶ 37–48. According to Plaintiff, CoreCivic was negligent in understaffing and in failing to take adequate measures to prevent the introduction of contraband into Wheeler Correctional

1

Facility. That, Plaintiff contends, was the cause of Craig's death; not his voluntary choice to ingest narcotics.

These conclusory allegations fail to state a claim against CoreCivic on their face. First, Craig's decision to ingest illegal drugs was an intervening cause which eliminates proximate causation and, therefore, prevents Plaintiff from stating a claim for negligence. Second, proximate cause aside, Craig's voluntary consumption of fentanyl narcotics is a textbook assumption of the risk that constitutes a complete bar to Plaintiff's negligence claim under Georgia law. Accordingly, Defendants request that Plaintiff's claims against them be dismissed.

## II. SUMMARY OF ALLEGATIONS

CoreCivic operates Wheeler Correctional Facility ("Wheeler"), a prison located in Alamo, Georgia, where Craig was incarcerated at the time of his death. *See* doc. 1 at ¶¶ 5, 11. According to Plaintiff, CoreCivic considers "the introduction of contraband, including narcotics, into Wheeler" to pose a risk of harm to prisoners and staff. *Id.* at ¶ 14. Indeed, Plaintiff alleges that a former assistant warden at Wheeler testified in 2022 (more than a year before Craig's death) that "keeping contraband from inmates" is "one of the things that keeps [him] up at night." *Id.*

Thus, to combat the introduction of illegal drugs into Wheeler, Plaintiff alleges that CoreCivic established two policies:[1] the "Entry/Exit" policy and the "Employee/Volunteer/Contract Staff Searches" policy. *Id.* at ¶¶ 14–18. The "Entry/Exit"

---

[1] CoreCivic has gone to great lengths, far beyond the two written policies that Plaintiff references, in its efforts to interdict contraband. However, considering the procedural posture of this case, Plaintiff's allegations are taken as true.

2

policy mandates that all individuals must clear a metal detector before entering the facility and are subject to additional searches (i.e., x-ray scans, canine detection, and black light searches). *Id.* at ¶ 17. The "Employee/Volunteer/Contract Staff Searches" policy permits the deployment of frisks and reasonable suspicion searches on staff members. *Id.* at ¶ 18. Plaintiff claims that "despite the promulgation of these policies," CoreCivic "failed to adequately search for and interdict narcotics, including fentanyl." *Id.* at ¶ 19.

Plaintiff tellingly provides limited information about Craig's incarceration at Wheeler and omits any information regarding whether he had a history of drug abuse. Instead, Plaintiff simply states that, while under CoreCivic's supervision, Craig "was able to access and use fentanyl narcotics by inhaling and smoking the substance through a metal pipe." *Id.* at ¶ 24.[2] What happened next is depicted in full by surveillance footage that has been manually filed with this motion. At approximately 6:30:00 p.m., Craig can be seen slumping forward while sitting at a table in the 700-Y dayroom. At 6:30:54 p.m., the other inmates sitting with Craig recognized that he has lost consciousness and began attempting to revive him. At 6:32:30 p.m., the other inmates in the dayroom leaned Craig back and started to place him on the floor. At the same time, two inmates walked towards the door to the dayroom, where the correctional officer on duty was situated. At 6:33:25 p.m., Craig was put on the

---

[2] Plaintiff's contention that Craig's use of narcotics was done "in plain view of security and surveillance cameras," is undercut by the surveillance camera footage that has been manually filed with this motion. *See generally* Surveillance Footage, at 6:00:00 p.m. through 6:30:00 p.m. As discussed further in Section III, *infra*, the video footage controls, and Plaintiff's allegations to the contrary should be disregarded.

3

floor and placed in the recovery position. At 6:33:53 p.m., the first correctional officer entered the dayroom and called for assistance on her portable radio. At 6:34:14 p.m., two other correctional officers entered the dayroom and began performing cardiopulmonary resuscitation on Craig. At 6:37:31 p.m., Wheeler's medical staff arrived, took charge of Craig's care, and administered naloxone (or Narcan) shortly thereafter. Craig did not recover and died from the effects of fentanyl toxicity "from the narcotics he had ingested at the table in the dayroom." *See* doc. 1 at ¶¶ 35–36.

The remaining allegations in the Complaint provide no facts about Craig, his incarceration at Wheeler, or the events leading up to his death. Rather, Plaintiff presents the conclusory allegation that CoreCivic failed to "employ sufficient qualified employees to ensure the security of the facility," and failed to "provide adequate staff and measures to prevent narcotics and contraband from entering the facility." *Id.* at ¶ 22. In doing so, Plaintiff appears to be relying on his contention that, in a ten-month span between August 2022 and May 2023, there were "many" instances of Wheeler's staff finding contraband within the facility.[3] Plaintiff does not, however, allege any specific facts concerning how Craig obtained the fentanyl narcotics or the quantity that he consumed. He also does not allege any facts suggesting that Defendants knew drugs were present in Craig's housing unit at the time of his death or that CoreCivic knew Craig was at risk of consuming drugs. And with respect to understaffing, Plaintiff does not allege facts concerning the manner in which Wheeler was purportedly

---

[3] If anything, these examples of the facility's staff discovering and seizing contraband show that CoreCivic's contraband interdiction efforts were succeeding.

understaffed, what posts were understaffed, or how understaffing specifically led to the drugs Craig consumed at Wheeler.

What is left, then, are Plaintiff's naked assertions that Craig knowingly consumed illegal drugs while confined at Wheeler, that the consumption of those illegal drugs caused him to die, and that, in Plaintiff's view, CoreCivic should have done more to stop him. For the reasons discussed below, these allegations are not sufficient to state a claim against CoreCivic. Thus, Plaintiff's claims should be dismissed.

### III. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).

This standard requires that the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, a legal conclusion, including one couched in factual allegation, need not be accepted as true on a motion to dismiss. *Id.*

5

Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the plaintiff's burden, as mere consistency does not establish plausibility of entitlement to relief, even if it supports the possibility of relief. *Id.*

In determining whether a complaint is sufficient under the standards of *Iqbal* and *Twombly*, it often is appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations—plausibly allege an entitlement to relief. *Id.* If not, the pleading fails to meet the standard set forth in Rule 8 and must be dismissed under Fed. R. Civ. P. 12(b)(6). *Id.* at 683.

Finally, Defendants have attached to this motion video footage that is referenced in the Complaint and reference it throughout. When assessing the sufficiency of a complaint on a motion to dismiss, a district court has some discretion to decide whether to consider matters outside of the pleadings. *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024). Extrinsic material that is referenced in the operative complaint and attached to a motion to dismiss may be considered by the court at the pleading stage if the attached material is (1) central to the plaintiff's claims

and (2) the authenticity of the document is not challenged.[4] *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). When that extrinsic evidence is video footage, and "where [the] video is clear and obviously contradicts the plaintiff's alleged facts," courts are to "accept the video's depiction instead of the complaint's account, and . . . view the facts in the light depicted by the video." *See Baker v. City of Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023).

## IV. ARGUMENT

### A. *Plaintiff's Complaint fails to establish the proximate causation necessary to allege a negligence claim against CoreCivic.*

To recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation, and damages. *See Johnson v. Am. Nat. Red Cross*, 276 Ga. 270, 272 (2003). "[A] plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury." *Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman*, 260 Ga. 569, 569 (1990). Proximate cause "is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." *Ga. Dep't of Transp. v. Owens*, 330 Ga. App. 123, 130 (2014). And "[i]nextricably entwined with concepts of negligence and proximate cause is the notion of foreseeability." *Brandvain v. Ridgeview Inst., Inc.*, 188 Ga. App. 106, 115 (1998). To that end, the well-established doctrine of intervening causes states:

---

[4] The attached video, surveillance footage from unit 700-Y, is directly referenced in Plaintiff's Complaint (*see* doc. 1 at ¶ 25) and depicts the events before, during, and after Craig's medical emergency. Accordingly, it is central to Plaintiff's claims and should be considered by the Court.

7

> There can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.

*See McQuaig v. McLaughlin*, 211 Ga. App. 723, 726 (1994).

Georgia's courts have long maintained that certain actions, most notably suicide, are per se intervening causes which destroy proximate causation, regardless of foreseeability. *See City of Richmond Hill v. Maia*, 301 Ga. 257, 259 (2017). Defendants are not aware of any binding Georgia precedent which discusses whether the act of procuring and consuming illegal drugs, resulting in the user's death, falls into this category of per se intervening causes. But the legal reasoning would be the same: a death by drug overdose, like the act of suicide, is "a new and independent agency which does not come within and complete a line of causation from the wrongful act to the death." *See Appling v. Jones*, 115 Ga. App. 301, 303 (1967). That, perhaps, is why other jurisdictions have often analogized the acts of suicide and the ingestion of illegal drugs and found that they fall under the same umbrella of self-inflicted harm. *See, e.g., Hampton v. Hamm*, No. 2:20-CV-385, 2022 WL 69214, at *5–8 (M.D. Ala. Jan. 6, 2022) ("ingesting illegal drugs is a self-inflicted harm" and collecting cases). Accordingly, this Court should find that, in this context,[5] the voluntary consumption of illegal drugs—like suicide—is a per se intervening cause that

---

[5] The context matters. This Court need not find *all* instances of consuming illegal drugs constitutes a per se intervening cause. Rather, this Court need only find that the consumption of illegal drugs is a per se intervening cause where the alleged negligence is the failure to prevent the user from obtaining the drugs.

8

destroys proximate causation and absolves the alleged tortfeasors of liability. Upon such a finding, Plaintiff's claims against Defendants would fail as a matter of law and should be dismissed.[6]

Even if consumption of illegal drugs is not a per se intervening cause (or if *Maia's* "special relationship" exception applies), Plaintiff still cannot demonstrate proximate causation because Craig's decision to ingest "fentanyl narcotics" in a quantity sufficient to kill him was an independent and unforeseeable intervening cause. Fundamentally, that is the case because what is true outside of prison is true inside of prison: any risk from the availability of drugs did not manifest until Craig chose to use them. Absent from the Complaint are any factual allegations that Craig was susceptible to drug use or how he obtained the "fentanyl narcotics" at issue. *See generally* doc. 1. The Complaint also lacks factual matter showing that CoreCivic knew drugs were present in Craig's housing unit at the time of his death. *Id.* What is left, then, is Plaintiff's conclusory allegation that Wheeler was understaffed and his broad contention that CoreCivic failed to adequately interdict narcotics. *Id.* at ¶¶ 19, 22.

---

[6] The Georgia Supreme Court's decision in *Maia* held that if there exists a "special relationship," such as between a jailer and his prisoner, then an exception to the general rule that suicide destroys proximate causation is triggered. 301 Ga. at 261. In such cases, proximate causation turns on the foreseeability of the intervening cause. *Id.* at 259 n.3.

The "special relationship" exception should not apply here. First, *Maia* is a suicide case and it deals with the general rule that the act of suicide severs proximate causation. That holding should not be read so broadly so as to extend the exceptions to that rule to all per se intervening causes.

9

These generic allegations are wholly detached from Craig's death and do nothing to demonstrate that Craig's consumption of "fentanyl narcotics" and his subsequent death were foreseeable. *See, e.g., Zhang v. Emory Univ.*, No. 23-12365, 2025 WL 1482873, at *8 (11th Cir. May 23, 2025) (holding in a suicide case that "the amended complaint had to plausibly allege that [defendants] could or should have foreseen that [the decedent] as an individual—not simply because he was Asian American and male—was highly likely to commit suicide."). Plaintiff was required to demonstrate that CoreCivic knew that Craig—the individual—was susceptible to the use of drugs and likely to overdose. *Id.* In failing to do so, Plaintiff's Complaint fails to plausibly allege proximate causation, and his claims for negligence therefore fail as a matter of law. *See Coleman*, 260 Ga. at 569. Accordingly, Plaintiff's claims against Defendants should be dismissed.

### B. *Plaintiff's claims are barred by the defense of assumption of the risk.*

Even if this Court determines that Craig's voluntary decision to ingest illegal drugs—and the injuries he sustained therefrom—is a proper predicate for Plaintiff's claims from a proximate cause standpoint, those claims remain barred on their face by the doctrine of assumption of the risk. The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, "without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." *See Muldovan v. McEachern*, 271 Ga. 805, 807 (1999). In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff: "(1) had actual

10

knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Watson v. Reg'l First Care, Inc.*, 335 Ga. App. 740, 741 (2016). Furthermore, knowledge of the risk is "the watchword of assumption of risk, and means both actual and subjective knowledge on the plaintiff's part." *Id.* If all these elements are satisfied, the plaintiff's assumption of the risk is "a complete defense to negligence." *Saulsbury v. Wilson*, 348 Ga. App. 557, 560 (2019). And while assumption of the risk is ordinarily a jury question, "in plain, palpable, and indisputable cases resolution of the issue by a jury is not required." *Yamaha Motor Corp., U.S.A. v. McTaggart*, 313 Ga. App. 103, 106 (2011).

In the vast majority of cases, the plaintiff's consent to assume the risk is not express but rather is implied by his or her conduct. *See Teems v. Bates*, 300 Ga. App. 70, 73 (2009). And when a person voluntarily undertakes an obviously dangerous activity, that person can be said to have assumed the risks necessarily attendant to that activity. *See Roberts v. Carter*, 214 Ga. App. 540, 541 (1994) ("[A] person cannot undertake to do what obviously is a dangerous thing . . . without assuming the risks incident thereto and without himself being guilty of such lack of due care for his own safety as to bar him from recovery."). Indeed, Georgia's courts have long adopted an "objective common sense standard in assessing whether a plaintiff had knowledge of a risk." *See Daly v. Berryhill*, 308 Ga. 831, 835 (2020). In other words, some risks are so clear that Georgia law imputes knowledge of the risk to the plaintiff, so long as the plaintiff is competent. *Id.* (collecting cases); *see also Landings Ass'n, Inc. v. Williams*,

11

291 Ga. 397, 399–400 (2012) (holding that a woman who was attacked by an eight-foot alligator assumed the risk of attack by walking near a lagoon after dark, even though the community in which she was walking advertised a policy of removing aggressive alligators); *Downes v. Oglethorpe Univ., Inc.*, 342 Ga. App. 250, 254 (2017) (holding that a competent 20-year-old university student was "necessarily aware" of the risk of drowning when he voluntarily entered the ocean, even if he was not aware of the presence of rip currents in the waters off the beach).

This is such a case. The face of Plaintiff's Complaint plainly states that Craig voluntarily used "fentanyl narcotics by inhaling or smoking the substance through a metal pipe." *See* doc. 1 at ¶ 24. Craig ingested "fentanyl narcotics" without coercion of circumstances: there are no facts alleged that anyone forced him to consume these substances against his will. And although the Complaint is silent as to Craig's subjective knowledge of the harm posed by consuming "fentanyl narcotics," that is such an activity that triggers the "objective common sense standard" discussed in *Daly*. 308 Ga. at 835. Consuming "fentanyl narcotics" carries with it a risk that is so clear, and the danger so obvious, that the knowledge of that risk should be imputed to plaintiff. *Id.* Indeed, it is a textbook example of a clear risk. There is perhaps no activity one can voluntarily undertake that is more obviously dangerous than consuming fentanyl. The risk associated with that activity is clearer than walking near an alligator-infested lagoon at night[7] or swimming in the ocean,[8] both activities

---

[7] *See Williams*, 291 Ga. at 399–400.

[8] *See Downes*, 342 Ga. App. at 254.

that Georgia's appellate courts have deemed to be obviously dangerous so as to impute the knowledge requirement.

As such, the elements of the assumption of the risk defense are satisfied. Craig voluntarily engaged in an activity that presented a clear and obvious risk: consuming "fentanyl narcotics." *See* doc. 1 at ¶ 24. Craig's decision to do so bars Plaintiff's claims negligence claims. *See Daly*, 308 Ga. at 834. That remains true regardless of whether Defendants owed a duty of care to Craig. *See City of Winder v. Girone*, 265 Ga. 723, 724 (1995) ("Even if a defendant is negligent, a determination that a plaintiff assumed the risk or failed to exercise ordinary care for [his] own safety bars recovery for the resulting injury suffered by the plaintiff[.]"). And this is a plain, palpable, and indisputable case that does not require resolution by a jury. *McTaggart*, 313 Ga. App. at 106. Thus, Plaintiff's claims against Defendants are barred and should be dismissed.

## V. CONCLUSION

Benjamin Craig voluntarily chose to ingest "fentanyl narcotics," an obviously dangerous activity that carries with it a clear and substantial risk. His decision to do so destroys proximate causation for Plaintiff's negligence claims and, even if it did not, precludes any negligence claim under the assumption of the risk doctrine. On these facts, Plaintiff's claims against Defendants cannot survive. Accordingly, Defendants request that this Court dismiss Plaintiff's claims against them.

Submitted this twentieth day of June, 2025

                                                            OLIVER MANER LLP

| | |
|---|---|
| P.O. Box 10186 | ***s/ Ben T. Tuten*** |
| Savannah, Georgia 31412 | JACOB D. MASSEE |
| (T) 912 236-3311 | Georgia Bar No. 551890 |
| (F) 912 236-8725 | BEN T. TUTEN |
| jmassee@olivermaner.com | Georgia Bar No. 299110 |
| btuten@olivermaner.com | |
| | ***Attorneys for Defendants*** |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case with a true and correct copy of the foregoing document in accordance with the directive from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing, and by electronic mail, addressed as follows:

James M. Slater, Esq.
Slater Legal PLLC
2296 Henderson Mill Road, NE #116
Atlanta, Georgia 30345
james@slater.legal

Samantha J. Funt, Esq.
Mitchell Shapiro Greenamyre & Funt, LLP
881 Piedmont Avenue
Atlanta, Georgia 30305
sam@mitchellshapiro.com

Submitted this 20th day of June, 2025.

OLIVER MANER LLP

P.O. Box 10186
Savannah, Georgia 31412
(T) 912 236-3311
(F) 912 236-8725
jmassee@olivermaner.com
btuten@olivermaner.com

*s/ Ben T. Tuten*
JACOB D. MASSEE
Georgia Bar No. 551890
BEN T. TUTEN
Georgia Bar No. 299110

*Attorneys for Defendants*