UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| JAMES ROBERT CRAIG,<br><br>　　Plaintiff,<br><br>v.<br><br>CORECIVIC, INC., *et ano*.,<br><br>　　Defendants. | Civil Action File<br>3:25-cv-50-DHB-BKE |

**PLAINTIFF'S MOTION TO APPORTION SETTLEMENT PROCEEDS**

This is a negligence and wrongful death lawsuit involving the death of Benjamin Craig ("Benjamin") at a facility operated by Defendants. Pursuant to O.C.G.A. § 19-7-1, Plaintiff James Robert Craig ("Robert"), Benjamin's father, files this motion requesting that the Court enter an order determining that a 100% allocation of the wrongful death settlement proceeds in this case to Robert is fair, given that Benjamin's mother, Eliesha Craig ("Eliesha"), abandoned him. Defendants take no position on the relief sought in this motion.

I.     **PROCEDURAL HISTORY**

Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC (collectively "Defendants") operate Wheeler Correctional Facility, where Benjamin was located at the time of his death. As a result of his death from fentanyl poisoning, Robert

filed this lawsuit against Defendants for negligence (Count I) and wrongful death (Count II). [ECF No. 1]. Defendants moved to dismiss the complaint [ECF No. 10], and shortly thereafter the parties asked the Court to stay this case while they engaged in mediation. [ECF Nos. 12 & 13]. Private mediation was successful, and the parties reached an agreement. [ECF No. 14].[1] Because probate matters were not completed at that time, the parties sought additional time to finalize those matters before closing this case. [*Id.* & ECF No. 15]. As noted above and in a concurrently filed status report, the probate court has not yet issued the letters of administration. To promote judicial economy, rather than delay until those matters are finalized, the parties have asked the Court to modify the stay to resolve the instant motion.

## II.    BACKGROUND

1.    Benjamin was born and raised in Powder Springs, Georgia. *See* Declaration of James Robert Craig ¶ 3 ("Craig Decl."), attached hereto as Exhibit 1.

2.    He died while incarcerated. *Id.* ¶ 2. At the time of his death, he was not married, and he did not have any children. *Id.*

---

[1] The agreement is confidential and the actual recovery, in Plaintiff's position, is not relevant to the adjudication of this motion, which only seeks a determination as to allocation for wrongful death proceeds. To the extent the Court requires review of the settlement agreement, which has not been executed, Plaintiff will provide it to the Court under seal for *in camera* review.

3. Until he was about 17 years old, Benjamin lived with Robert and his mother Eliesha. *Id.* ¶¶ 3–4. Craig Eliesha was abusive towards Robert, Benjamin, and Benjamin's brother Robbie throughout Robbie and Benjamin's childhood. *See* Craig Decl. ¶ 5; *see also* Declaration of Justin Robert Craig ¶ 5 ("Robbie Decl."), attached hereto as Exhibit 2. For example, she would yell and throw objects at the brothers, like ashtrays, when they were kids. *See* Robbie Decl. ¶ 5.

4. In or around 2005, when Benjamin was around 17 years old, Eliesha abandoned Robert and Benjamin (Robbie had already moved out of the home). Craig Decl. ¶ 4; Robbie Decl. ¶ 4.

5. Eliesha never contacted Robbie or Robert again, *see* Robbie Decl. ¶¶ 4, 7, Craig Decl. ¶¶ 4, 9, and as far as they know she never talked to Benjamin ever again. *See id.*

6. Even though Eliesha lived with Benjamin until he was around 17, she did not maintain a healthy, nonabusive relationship with him. *See* Robbie Decl. ¶ 6; Craig Decl. ¶¶ 5–6. She did not help him with homework, play with him, or help him with other daily activities. *See* Robbie Decl. ¶ 6; Craig Decl. ¶ 6. Robert was the primary person who provided for Benjamin. Craig Decl. ¶ 7. Eliesha did not attempt to establish a meaningful relationship with Benjamin during his lifetime, including after she abandoned him, and never contributed financially to his care or

upbringing. *Id.* ¶¶ 6–7. She never provided any child support for Benjamin in any form. *Id.* ¶ 7.

7. Through the probate process, unsuccessful efforts were made to contact and locate Eliesha. *See* Affidavit of Due Diligence, attached as Exhibit 3; *see also* Craig Decl. ¶ 8.

8. Ultimately, the probate court authorized service by publication. *See* Order, attached as Exhibit 4; *see also* Craig Decl. ¶ 8.

9. To date, Eliesha has not contacted the family or the probate court. *See* Craig Decl. ¶ 9; Robbie Decl. ¶ 7. The family does not know whether she is even alive. *See* Craig Decl. ¶ 9; Robbie Decl. ¶ 4.

### III.   ARGUMENT

Under Georgia law, there is no common law right to wrongful death. *Tolbert v. Maner*, 271 Ga. 207, 208 (Ga. 1999). O.C.G.A. § 19-7-1(c)(1) provides that "[i]n every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child...." Further, under section 19-7-1, the law authorizes parents to recover for the wrongful death of their child if the child leaves no surviving spouse or children. *Carringer v. Rodgers*, 276 Ga. 359, 364–65 (Ga. 2003). In cases where the parents of a deceased child are "divorced, separated, or living apart, a motion may be filed by either parent prior to trial requesting the judge to apportion fairly any judgment amounts awarded in the

4

case." O.C.G.A. § 19-7-1(c)(6).

Where such a motion is filed, "a judgment shall no be automatically divided." *Id.* While the statute speaks to "judgments," courts in Georgia have construed this language to include apportionment of settlement proceeds. *Amstead v. McFarland*, 287 Ga. App. 135, 136 (Ga. Ct. App. 2007).

Accordingly, while O.C.G.A. §§ 19-7-1(c) and 51-4-4 provide a means for a parent to recover the full value of their children's lives, a parent can lose that entitlement in a variety of ways, like those presented here. For example, the Georgia legislature has established that parent can lose that entitlement by "[f]ailure to provide necessaries for the child or abandonment of the child; . . ." O.C.G.A. § 19-7-1(b)(3) (described that parental power "shall be lost" under these circumstances). And thus, "[i]f it is established that a parent has lost his or her parental power under O.C.G.A. § 19-7-1(b), the parent's right to share in the proceeds of a claim for the wrongful death of his or her child is also forfeited." *Baker v. Sweat*, 281 Ga. App. 863, 867 (Ga. Ct. App. 2006) (citing *Dove v. Carver,* 197 Ga.App. 733, 735 (Ga. Ct. App. 1990)).

Under Georgia law, the standard to establish loss of parental power is clear and convincing evidence of actual desertion "accompanied by an intention to sever entirely the parental relation." *Uniroyal Goodrich Tire Co. v. Adams*, 221 Ga. App. 705, 706 (Ga. Ct. App. 1996) (citations, punctuation and emphasis omitted).  Once

5

it is established that a parent has lost her parental power under O.C.G.A. § 19-7-1(b), the parent's right to share in the proceeds of a claim for the wrongful death of his or her child is also forfeited. *See Dove*, 197 Ga. App. at 735 (recognizing that a legal father could lose the right to recover for the wrongful death of his child if it is shown by clear and convincing evidence that he had abandoned the child).

Here, Benjamin's mother Eliesha failed to provide support for Benjamin and abandoned him while he was in high school. She had no role in his life or contact through the time of his death, almost twenty years later. She has also not come forward after publication of notice of Benjamin's death by the probate court. On this basis, the Court should conclude that she has lost her parental rights, forfeiting any entitlement to wrongful death proceeds in this case.[2]

---

[2] Under Georgia law, an evidentiary hearing must be held to help assess the fair allocation of wrongful death proceeds to each parent. At such hearing, the court is to consider the parental relationship with the child, including custody, control and support, as well as any other factors found to be pertinent. O.C.G.A. § 19-7-1(c)(6). While Robert and his son have provided evidence with this motion and are willing and able to provide such evidence to the Court at a hearing, Robert believes that hearing is not required here under the *Erie* doctrine, which applies. In at least once case, the Eleventh Circuit has found that a hearing requirement under Georgia law (for summary judgment) was not substantive and therefore not required before adjudicating summary judgment in a diversity action in a Georgia federal court. *Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986). And while in another case, the Eleventh Circuit held that a hearing requirement for a minor's compromise under Alabama law was substantive and therefore required in federal court, the context was different. *Burke v. Smith*, 252 F.3d 1260 (11th Cir. 2001). The panel there reasoned that the lack of a hearing requirement in federal court would discriminate against minors in federal court because "an unscrupulous guardian" could contract away the minor's rights in federal court "without that minor

### IV. CONCLUSION

Accordingly, based on the evidence presented with this motion, Plaintiff James Robert Craig respectfully requests that the Court grant this motion and allocate 100% of the wrongful death proceeds in this case to Plaintiff James Robert Craig as fair and appropriate under the circumstances.

Dated: October 19, 2025

|  | Respectfully submitted, |
|---|---|
|  | */s/ James M. Slater* |
| SLATER LEGAL PLLC | James M. Slater |
| 2296 Henderson Mill Rd. NE #116 | Georgia Bar No. 169869 |
| Atlanta, Georgia 30345 |  |
| (404) 458-7283 |  |
| james@slater.legal |  |

---

receiving the same protections afforded to the minor in state court." *Id.* at 1266. Because Eliesha, as Benjamin's parent, may respond to this motion and supply evidence to support a different allocation of wrongful death proceeds, the same concerns presented in *Burke* do not apply here. This is particularly true where she has already been given notice of Benjamin's death and her right to seek proceeds as his heir through the probate court.

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.1, I hereby certify that the following document was filed through the Court's CM/ECF portal, which will serve a copy on all counsel of record.

*/s/ James M. Slater*
James M. Slater
